PAUL SCHNYDER AND HUGO JACKISCH, PROSECUTORS, v. JOHN J. McGOVERN, CLERK OF THE COUNTY OF HUDSON, RESPONDENT.

DANIEL HERMANN, PROSECUTOR, v. CHARLES F. STOEBLING, CLERK OF THE HUDSON COUNTY BOARD OF ELECTIONS, RESPONDENT.

Argued February 19, 1924—Decided March 25, 1924.

**Elections—Special Elections—Formalities in Calling and Holding—Meaning of "Adjoining Municipalities" Stated—Act of 1923, c. 117, Sustained.**

On *certiorari,* &c.

Before Justices TRENCHARD, PARKER and CAMPBELL.

For the prosecutors, *Warren Dixon.*

For the respondents, *John J. Fallon.*

PER CURIAM.

Two writs of *certiorari* were allowed by Mr. Justice Minturn on February 16th, 1924, and made returnable February 19th, 1924, and they bring before us for review the proceedings, up to the date of the allowance of the writs, had and taken under an act entitled "An act to enable adjoining municipalities, other than cities, lying in the same county, to consolidate and form a city" (*Pamph. L.* 1923, *ch.* 117), for the calling and holding of an election under such act.

The municipalities involved are situated in the county of Hudson and are, with their respective populations, as shown by the last federal census, as follows:

North Bergen, 23,334; West Hoboken, 40,068; town of Union, 20,651; West New York, 29,926; Secaucus, 5,423: Guttenberg, 6,728; Weehawken, 14,485.

Three reasons are assigned and argued why the proceedings brought up for review should be set aside—

*First*—Because the justice of the Supreme Court was without jurisdiction to make the order of December 26th, 1923, for the special election to be held March 4th, 1924, because the municipalities were not, and are not, adjoining municipalities as required by chapter 117, *Pamph. L.* 1923.

The contention of the prosecutors is that under the language of the statute in question and the use and employment of the word "adjoining" therein, each and every of the municipalities must actually in some part of its and their territory bound upon some part of the territory of each and every other municipality in the group seeking consolidation.

We are unable to so conclude.

The adjective "adjoining" is used in sections 1 and 2 of the statute, while in section 5, referring to the order to be made, after the election, the adjective "contiguous" is employed as follows: "Shall make an order directing such of said municipalities as are *contiguous* and as have voted for consolidation and incorporation as a city to proceed to incorporate * * *."

And again in section 5: "And provided further, that where two or more *contiguous* municipalities voting for consolidation and incorporation as a city *are separated from other contiguous* municipalities voting the same way, by one or more municipalities voting against consolidation and incorporation as a city, only the municipalities that are contiguous and which, according to the last preceding census, have together the greater population shall proceed to incorporate under the provisions of this act."

The definitions of the words "adjoining" and "contiguous" to be found in the recognized and standard dictionaries present a broad latitude from which to make a choice. We conclude that the legislature used the word "adjoining" in the sense that some part of the territory of each municipality must bound upon some part of the territory of another municipality in the group.

*Second*—Because chapter 117 (*Pamph. L.* 1923) is unconstitutional, violating paragraph 4, section 8 of article 4 of the state constitution, in that the object of the act is not expressed in its title.

The language of that portion of the constitution referred to in this attack is:

"To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object and that shall be expressed in the title."

This court, in *State* v. *Wildwood,* 83 *N. J. L.* 188, held the act (*Pamph. L.* 1908, *p.* 295), which is identical in title and context with the act here under attack, constitutional. In that case six specific reasons were urged against its constitutionality, and amongst such reasons one was, as here, that its object was not expressed in its title.

Prosecutors contend, however, that the precise reason urged here was not urged in the Wildwood case, and that is that the title of the act relates to adjoining municipalities, and that means, as before suggested, that some part of the territory of each and every municipality in the selected group must actually bound upon some part of the territory of each and every other municipality in the group, and that if a contrary construction be placed upon the statute, such as the petitioners, the Supreme Court justice and this court have hereby put upon it, then the title is not expressive of the object of the legislation and falls within the aforesaid constitutional prohibition.

With this contention we are unable to agree and find the title to the act to be in complete compliance with the constitutional mandate, giving to the statute that meaning and construction which we already have indicated.

This is a question that has been passed upon so frequently by our courts that no useful purpose would be served in citing all the authorities nor any considerable part thereof.

It is enough to say that the pith of them all may be obtained from the following two:

*Moore* v. *Burdett,* 62 *N. J. L.* 163—"In the interpretation of this constitutional provision the *object* of the law must not be confused with its product. Every law is an exhibition of the legislative activity directed to a particular end. This purposive direction implies the kind of activity put forth and the choice of the field for its display, but not the particulars of the purpose or the means selected for its accomplishment. The former is the *object* of the law, the latter is its *product.* The 'object' of every law, by force of the constitution, must be single and be expressed in the title of the law; the 'product' may be as diverse as the object requires and finds its expression in the terms of the enactment only. *In fine, the title of an act is a label, not an index."*

*Sawter* v. *Shoenthal,* 83 *N. J. L.* 499—"Under the requirement of the constitution that the object of an act must be expressed in its title, the true rule is that the object expressed must give notice of the effect of the legislation to one conversant with the existing state of the law. *The validity of the title is not to be determined by nice distinctions of etymology or definition of words, but by the facts of the case and the history of the legislation."*

This brings us to the third and last attack upon the proceedings under review, and that is:

"The election cannot lawfully be held on March 4th, because the legal prerequisites to its holding have been omitted."

One contention of the prosecutors is that section 3 of the Consolidation act under review provides that "the election shall be conducted as nearly as may be in like manner as general elections are conducted."

This language is used in direct connection with a direction as to the opening and closing the polls; the election officers who are to conduct the election, &c.

Section 2 of the act providing for the calling and ordering the election speaks of it as a "special election."

It is contended that proper notice of the election was not given, and this being a mandatory requirement any failure therein is fatal. Against this respondents urge that the giv-

ing of notice is merely directory and any failure therein, except arising from established fraud and design, which has not been shown or intimated in this case, would not be fatal or permitted to be used to thwart and set aside the expressed will of the voters. The cases relied upon by respondents. however, do not go to elections of this character. General elections and such others where the time is fixed by general statutes come within the purview of such principles; but not so such elections as the one in question.

We are of the opinion, however, so far as the record before us shows, that there was proper compliance with the statute in the giving of notice of the election and for the revision of the registry lists of voters.

To determine this we must have recourse to the Election act of 1920. *Pamph. L.* 1920, *ch.* 349. Section 11, article 25, respecting notice of special elections such as the one under consideration, where the statute does not fix the manner of giving notice, provides that the notice to the public of such election "shall be given in the same manner as herein provided for giving notice of the general election *so far as may be.*"

Section 5, article 10 provides: "The county board of elections shall, at least three weeks preceding the primary for the general election, cause a notice to be published in not more than two newspapers of the county as said county board of elections shall select, setting forth that the district boards of registry and election of each election district in such county will meet for the purpose of making a registration of voters on the days and between the hours hereinafter designated for that purpose; * * * and making known the time and place and purpose of holding the general election thereafter * * * provided that such part of the original notice as published which pertains to a day of registration or primary election which has occurred shall be eliminated from such notice in succeeding insertions."

Section 7, article 10 provides for the publication of such notice at least once and not more than twice in each week,

and that if there be a newspaper printed and published in a municipality such newspaper shall be one of the papers in which such notice shall be published.

The notice from the county clerk to the municipal clerks, or *vice versa,* was not necessary because the Consolidation act provides for such notice by its own terms, in that when the order for the election is signed by the justice of the Supreme Court it shall be forthwith filed with the clerk of the county and a copy served on the county board of elections and the clerks of the municipalities mentioned in the order within five days from the date of the order.

No complaint is made that this was not done. Returning then to a consideration of the notice of election and directing our attention to the registration, therefore we find from the Election act as follows:

Section 12, article 25 provides that registers for special elections shall be made up as in the act prescribed, *with such modifications, if any, as to time of meeting of the district boards of registry and election as the county board of elections may deem necessary.*

Section 13, article 25 provides that the county clerk shall deliver to the municipal clerks the registers of voters thirty (30) days prior to the election.

Section 14 provides for the delivery of such registers by the municipal clerks to the district boards of election in time to be used at such election.

Sections 15, 16, 17 and 18 provide that in municipalities exceeding fifteen thousand inhabitants the first registration day shall be the Tuesday four weeks preceding the election, and the second and last registration day on Tuesday, two weeks preceding the election, and that on said days the district boards shall sit from one P. M. to nine P. M., and require that on the day succeding the first registry day a copy of the revised register shall be posted, and on the day succeeding the second sitting a copy shall be filed with the county board of elections and the other copy retained for use at the election.

Sections 19 and 20 provide that the district boards of registry and election shall meet to revise the registry of voters in municipalities of fifteen thousand or less on the Tuesday next preceding the election, from one P. M. to nine P. M., and shall file one copy of the registry so revised with the county board of elections and retain the other for use at the election.

Section 21 provides that the county board of elections shall sit on Thursday and Friday next preceding the election, "for the purpose of adding to the register the names of any legal voters entitled to vote at such election and erasing therefrom the name of any voter not so entitled to vote * * *."

Now, we find that the seven municipalities concerned in the special election, North Bergen, West Hoboken, town of Union and West New York, each had populations exceeding fifteen thousand and were, therefore, entitled to two sittings of the district boards of registry and election to revise the register of voters; and Secaucus, Guttenberg and Weehawken each had populations less than fifteen thousand and were entitled to one meeting of the district boards for revision of the registry of voters.

The return to the writ made by the clerk of the county board of elections shows that that board fixed Monday, February 11th, and Tuesday, February 19th, 1924, as the days for revision of the registers of voters by the district boards in municipalities having a population exceeding fifteen thousand. This was respectively Monday, three weeks prior to the election, and Tuesday, two weeks prior to the election, the first date being one week later than the time generally fixed by the statute, but such fixing or designation of days is authorized by section 12, article 25 of the Election act above referred to.

The county board fixed Tuesday, February 26th, 1924, as the date for revising the registry lists by the district boards in municipalities of fifteen thousand or under. This was in accordance with the requirements of the Election act, being the Tuesday preceding the date of the election.

The county board, in compliance with the act, also fixed Thursday and Friday, February 28th and 29th, as the dates it would sit to add to or strike from said registers.

The county board further designated the "Hudson Dispatch," "North Hudson News" and "Secaucus News" as the newspapers in which the notice of election and meetings of district boards, the polling places and days of sitting to revise the registers should be published, and directed their clerk to so advertise and publish such notices.

The presumption is that such notice was given. Nothing appears in the record or return to the contrary.

The affidavit of the prosecutor, Daniel Hermann, made on February 9th, 1924, says "the first and only public notice of meeting of the district boards of registry and election was published on pages 17 and 18 of the "Hudson Dispatch" * * * in its issue of *Friday, 8th, 1924.* * * *."

The action of the county board just referred to took place on February 5th, 1924, and therefore it is entirely probable that the first publication took place on Friday, February 8th, 1924. With reference to the statement that it was "the first and only public notice" it must be kept in mind that these reviewing proceedings were taken while the preparation of the election was in progress; that the affidavit in question was made February 9th and the writ of *certiorari* allowed February 16th, 1924.

Now, such notice was published three weeks and three days before the election to be held March 4th, 1924; two days before the first day fixed to revise the registers in municipalities having a population exceeding fifteen thousand, and one week and three days prior to the second day fixed to revise registers, and was two weeks and three days before the date fixed to revise the registers in municipalities having a population of fifteen thousand or less.

We think and find that this was a substantial and sufficient compliance with the terms of the Election act in giving notice of the election in question "in the same manner as herein provided for giving notice of the general election *so far as may be.*"

The only other thing complained of is, as is said, the county clerk did not deliver thirty days before the election to the municipal clerks the registers of voters filed with him.

The return is silent as to this and the only thing we have before us is the affidavit of the prosecutor, Hermann, used upon the application for the writ and technically insufficient as a basis for present action (*Baldwin* v. *Flagg,* 43 *N. J. L.* 499), before referred to and in which he deposes as follows:

"The county clerk did not deliver to the municipal clerk of the town of Guttenberg the registry of voters, as required by section 13 of said article 25 of said chapter 349 of the laws of 1920. I believe that said county clerk has not delivered to any municipal clerks of the said municipalities above mentioned the said registry lists, as above provided for."

Assuming that such are the facts, it does not appear that because thereof any district board was or would be prevented from properly performing its duty in revising the register nor that any legal voter had been or would be harmed or prejudiced thereby. Such requirement of the Election act is merely directory and failure of any public officer to comply therewith, aside from fraud or design to prejudice the rights of the electors (and none is urged), and particularly the rights of those entitled to vote, have not been shown to have been interfered with, does not warrant this court in setting aside the proceedings preparatory to an election of this character.

The order and proceedings under review are affirmed, with costs.